## A96A0158. HEIGHT v. THE STATE.

(472 SE2d 485)

RUFFIN, Judge.

A jury convicted Michael Height of two counts of selling cocaine and one count of possession with intent to distribute. Height appeals from the court's judgment of conviction, and we affirm.

1. In his first enumeration of error, Height challenges the sufficiency of the evidence.

Viewed in a light most favorable to support the verdict, the evidence at trial showed that the Newton County East Metro Drug Enforcement team was investigating Height for selling cocaine. As part of the investigation, a confidential informant arranged for Height to sell Agent Chaneyfield a half-ounce of crack cocaine at a local convenience store parking lot. When the informant and Agent Chaneyfield arrived at the store parking lot, the informant contacted Height on his digital pager and informed him they had arrived. Shortly thereafter, Height arrived driving a burgundy Dodge Shadow, accompanied by two companions, Derrick Mathis and Christopher Thomas. Height immediately left the car and went inside the convenience store. Thomas then approached Agent Chaneyfield and the informant, removed from his pocket a plastic bag containing cocaine, and conducted the sale. Agent Chaneyfield testified that when he asked Thomas about the weight of the cocaine, Thomas responded that it "was kind of light . . . next time it would be better. . . ." When Thomas returned to the Dodge Shadow after the sale, Height exited the store, joined his companions in the car, and drove away.

The task force arranged for a second cocaine sale to be conducted later the same evening. In this transaction, Agent Thomas arranged for Timothy Bell to sell him one ounce of cocaine in a shopping center parking lot. At the time Bell did not have any cocaine, so he called Height to obtain cocaine from him. When Agent Thomas arrived at the parking lot, he paged Bell to inform him he had arrived. A few minutes later, Bell arrived in a pickup truck with a companion, Daniel Petty. The two exited the car and looked around the parking lot, then Petty started "waving his arms in the air as if to signal somebody." Petty informed Agent Thomas that the cocaine was on the way. Shortly thereafter, Height drove his burgundy Dodge Shadow into the parking lot and met with Bell and Petty. After approximately five minutes, Bell and Petty met Agent Thomas at the pickup truck and completed the cocaine sale. As Agent Thomas was leaving the parking lot, Bell and Petty returned to Height's car, at which time Petty gave the proceeds from the sale to Height.

Height was arrested for the two cocaine sales approximately five months later. When officers informed him he was under arrest,

Height removed a plastic bag from his pants which contained three smaller plastic bags of crack cocaine. The officers also recovered from Height approximately $800 in cash and a pager.

Although Height denied participating in either of the sales, and contends there was no evidence presented that he personally conducted the sales, we find there was sufficient evidence presented that he was a party to the crimes to authorize his convictions. OCGA § 16-2-20. See also *Stevens v. State*, 210 Ga. App. 355 (1) (436 SE2d 82) (1993). Likewise, there was sufficient evidence to support the trial court's denial of Height's motion for a directed verdict. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Decker v. State*, 217 Ga. App. 803 (1) (459 SE2d 586) (1995).

2. Height asserts that the trial court erred in allowing the State to strike four African-Americans from the jury venire in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Because the prosecutor offered purportedly race-neutral reasons for his strikes, we need not address whether Height established a prima facie case of discrimination. *Parker v. State*, 219 Ga. App. 361, 362 (1) (464 SE2d 910) (1995) (physical precedent only). As to the reasons offered by the prosecutor, they must be legitimate, race-neutral, and related to the particulars of the case. Id.

The record shows that the prosecutor struck the first African-American because the juror stated that Height was her friend and because she knew his mother and accomplices Bell and Petty. The juror stated that she was related to Petty and that her relationship would affect her ability to decide the case fairly and impartially. The trial court was authorized to find that this was a legitimate, race-neutral reason that was related to the case. See *Davis v. State*, 263 Ga. 5 (10) (426 SE2d 844) (1993).

A second African-American struck by the prosecutor also stated that she was Height's friend. The prosecutor stated he struck this juror because she was Height's friend and because he previously prosecuted her brother for murder. Based on these facts, the prosecutor felt that the juror may harbor some prejudice against the State generally and him personally for the prosecution. The trial court was authorized to find that this was a legitimate, race-neutral reason that was related to the case. See id.; *Henry v. State*, 265 Ga. 732 (2) (462 SE2d 737) (1995).

The prosecutor struck another African-American because she stated she was Height's friend and he felt that the juror may be prejudiced or have some discomfort due to the friendship. The trial court was authorized to find that this was a legitimate, race-neutral reason that was related to the case. See *Davis*, supra.

The prosecutor struck the last African-American because the juror stated he was Height's friend and because the prosecutor

noticed the juror had difficulty hearing. The prosecutor stated that due to the juror's friendship with Height, he may have some prejudice or discomfort and that due to his hearing problem he may have problems following the testimony. The trial court was authorized to find that these were race-neutral reasons that were related to the case. See id.; *Williams v. State*, 195 Ga. App. 648 (394 SE2d 601) (1990).

Although Height argues that the prosecutor failed to strike another African-American who stated she knew Height, the transcript shows that this juror stated only that she went to school with Height, and unlike the jurors the prosecutor struck, did not state that she was Height's friend. Based on the foregoing, we find no error in the trial court's denial of Height's *Batson* challenge.

3. Height asserts the trial court erred in admitting Agent Chaneyfield's testimony that when he asked Thomas about the weight of the bag in the first sale, Thomas responded that it "was kind of light . . . next time it would be better. . . ." We disagree. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." OCGA § 24-3-3. The trial court did not abuse its discretion in admitting this statement as part of the res gestae. See *Mobley v. State*, 218 Ga. App. 739 (3) (463 SE2d 166) (1995); *Bostic v. State*, 173 Ga. App. 494 (4) (326 SE2d 849) (1985).

4. Height asserts the trial court erred in restricting his cross-examination of the Georgia Bureau of Investigation forensic scientist who tested the cocaine.

The transcript shows that the following exchange occurred between Height's attorney and the forensic scientist during cross-examination: "Q. Have you made mistakes because of the vast pressure of work at the crime lab? A. Not that I'm aware of. Q. Has anybody there made mistakes?" The court sustained the State's relevance objection to this latter question.

The trial court did not abuse its discretion in sustaining the State's objection. Height has pointed to no evidence showing that any other crime lab employees tested the substances identified as cocaine. Accordingly, the question was of marginal, if any, relevance. *Jeffers v. State*, 263 Ga. 133 (2) (429 SE2d 519) (1993). We find no error.

5. Height asserts that the trial court erred in allowing a State's expert witness on drug investigations to testify concerning the relevance of items Height possessed at the time of his arrest. Specifically, Height points to three portions of the expert witness's testimony.

First, Height contends the trial court erred in admitting the

expert's testimony that the three small bags of cocaine that Height removed from his pants were consistent with the amount and manner of packaging of cocaine intended for sale. Because such testimony "is not necessarily within the scope of the ordinary layman's knowledge and experience[,] . . . [it] was properly admissible under OCGA § 24-9-67. [Cit.]" *Davis v. State*, 200 Ga. App. 44, 46 (2) (406 SE2d 555) (1991).

Second, Height contends the trial court erred in admitting the expert witness's testimony that drug dealers typically carry a large amount of cash. However, the record reflects that although Height initially objected to this testimony, after some discussion concerning the grounds for his objection, he withdrew it. Accordingly, we will not consider this objection on appeal. *Young v. State*, 217 Ga. App. 575 (3) (458 SE2d 391) (1995).

Likewise, although Height contends that the trial court erred in allowing the expert to testify concerning the relevance of the pager found on Height, the transcript shows that he never objected to this testimony. Accordingly, we do not consider this objection. Id.

6. Height asserts the trial court erred in giving the State's charge on mere presence. However, the transcript of the charge conference shows that after the trial judge read the entire charge he would give on presence, which included the State's requested charge that Height previously objected to, Height's trial counsel stated: "I like that a lot better, yes . . . [t]hat puts them into context." Because Height acquiesced in the court's ruling that it would give the State's requested charge, he cannot complain on appeal. *Pressley v. State*, 197 Ga. App. 270 (4) (398 SE2d 268) (1990). An embraced error is one for which appellate courts lack enthusiasm. Moreover, the requested charge is a correct statement of the law and was adjusted to the evidence presented. See id.; *Stoe v. State*, 187 Ga. App. 171 (3) (369 SE2d 793) (1988).

7. Height asserts the trial court erred in failing to give his request to charge on circumstantial evidence and mere presence in the vicinity of drugs. We disagree. The transcript shows that the court's charge covered circumstantial evidence, mere presence and association, and the elements of each offense. These principles are substantially the same as those stated in Height's requested charge. " 'It is not necessary that the jury be given the exact language requested where the same principles fairly are given to the jury in the general charge. (Cits.)' [Cit.]" *Trotter v. State*, 216 Ga. App. 612, 614-615 (3) (455 SE2d 121) (1995). Accordingly, this enumeration is without merit.

8. In his last enumeration of error, Height asserts that the trial court erred in failing to give a complete charge on jury deliberation. In his brief, Height merely recites the language of the Suggested Pat-

tern Jury Charge and states that the charge given "resulted in an inadequate charge to the jury." Court of Appeals Rule 27 (c) (2) provides that "[a]ny enumeration of error which is not supported in the brief by citation of authority or argument shall be deemed abandoned." Because this enumeration of error is not supported by citation of authority or argument, it is deemed abandoned.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED JUNE 5, 1996.

*Lee Payne*, for appellant.
*Alan A. Cook, District Attorney, William K. Wynne, Jr., Assistant District Attorney*, for appellee.